**Alfred H. GASTON, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Aug. 13, 1973.

Rehearing Denied Sept. 25, 1973.

Certiorari Denied by Supreme Court Feb. 19, 1974.

James W. Rutherford and Philip M. Carden, Nashville, for plaintiff in error.

David M. Pack, Atty. Gen., Weldon B. White, Jr., Asst. Atty. Gen., Aaron Wyckoff, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

## OPINION

O'BRIEN, Judge.

Appeal in the nature of a writ of error from judgment of the Criminal Court of Davidson County on a jury verdict of conviction for fraudulent breach of trust in an amount over $100.00, with a prison sentence of three years.

Defendant was a real estate broker in Davidson County, Tennessee. On August 28th, 1969, acting as agent for Charles E. Sherrill, and wife, he entered into a written contract for sale of a parcel of real estate known as 2205 Wickson Avenue to Hattie Lou Farmer. He signed the contract as agent and accepted $200.00 earnest money. The contract was a standard form of real estate sales contract commonly used in that locality, providing among other terms and conditions, "seller agrees to pay off loan balance with Home Federal and furnish buyer warranty deed and title"; and that the seller would convey good and merchantable title to buyer by general warranty deed, subject to no defects, liens or encumbrances, except as specified. On September 3rd, 1969, defendant received the balance of the purchase price from the buyer and furnished a settlement sheet indicating no mortgage was assumed or given. On September 4th, 1969, this sum was deposited in defendant's checking account in the name of Al Gaston Realty Company. On September 5th, 1969, the sellers executed a warranty deed to the property, which was acknowledged by the defendant, and which indicated in the habendum clause that the property was unencumbered, the deed showing no exceptions. Defendant did not pay off the mortgage indebtedness with the proceeds of the sale, but continued to pay monthly installments, including taxes, interest, and insurance on the loan until April, 1971, when the total balance due was paid.

During the interval from September 4th, 1969, through September 30th, 1969, the period for which records were introduced, defendant's bank statement indicates that deposits were made in excess of $24,000.00. His wife, with whom he had been having some domestic difficulties, and who was authorized to issue checks on his business account at the time, withdrew the sum of $1,657.53 from the account, the cancelled

checks indicate this entire sum went to pay personal or business expenses. During the same period of time, other withdrawals totaling more than $16,000.00 were made from the account. The testimony was that only defendant and his then wife had authority to make such withdrawals.

The defendant testified that he knew the mortage indebtedness should have been paid off at the time of the closing but he did not do so because he was short of cash. He had not given the mortgage company notice of the sale or assumption of the mortgage by the purchaser. He was aware this was the ordinary practice in event of a sale of real estate.

There is no major conflict between the State's evidence and that of the defendant on the factual issues in this case, and it is clear that the mortgage on the property at 2205 Wickson Avenue was not paid until some 19 months after the sale. The defense in this case being the matter of intent of the defendant.

The first assignment of error contends that defendant was entitled to a directed verdict at the close of the State's evidence or at the close of all the evidence, (1) because the indictment charged in the only count relied on by the State that defendant acted "with a felonious intent then and there to deprive the true owner thereof"; (2) because none of the evidence showed any appropriation at all of "good and lawful money of the United States" as charged in both counts of the indictment; (3) because the statute under which the State and the court assumed the first count was drawn requires two intents—an intent to abide by the contract at the time the property is entrusted, and a "determination of fraud" at a later time.

■■■ . This assignment must be overruled. We do not find any infirmity in the indictment. Had there been such an infirmity as would invalidate the indictment it was incumbent upon the defendant to proceed by plea in abatement or motion to quash prior to going to trial on the issues.

State ex rel. Henderson v. Russell, 3 Tenn. Cr.App. 204, 459 S.W.2d 176. Moreover, it is not the office of a motion for directed verdict to provide a means for dismissing a law suit because of an alleged defect in an indictment. T.C.A. Sec. 40-2529, provides that the trial judge shall direct the jury to acquit the defendant if at the close of the State's evidence or all the evidence the court is of the opinion that the evidence is insufficient to warrant a conviction. The statute calls for action by the trial judge on evidentiary matters, and nothing more. The facts in this case created a jury question and to have directed a verdict of not guilty on this evidence would have been an unwarranted assumption of authority by the trial judge. See Rambo v. State, Tenn. Cr.App., 472 S.W.2d 911.

■■■ The indictment in this case clearly charges the defendant with appropriating the prosecutor's property to his own use, and the law has long been declared to be in this State that the essence of fraudulent breach of trust does not embrace any attempt to deprive the true owners of their property, but fraudulently to appropriate the same to defendant's use. . . . . . And it is not essential or necessary to prove any intent on his part to deprive the owner of his property. Raine v. State, 143 Tenn. 168, 226 S.W. 189; McCommon v. State, 185 Tenn. 613, 207 S.W.2d 333; Switzer v. State, 213 Tenn. 671, 378 S.W.2d 760; Norton v. State, 217 Tenn. 265, 397 S.W. 2d 183. No serious argument is made for the second proposition that, "none of the evidence showed any appropriation at all of 'good and lawful money of the United States'", and we think properly so. The checks delivered by the Farmers to defendant for the purchase of real estate was merely an order drawn upon their bank directing payment of the specified sum of money to the defendant upon demand. The checks were made payable to the Farmers, endorsed by them and delivered to the defendant who deposited them in turn. Defendant can hardly dispute that

the sole function of the check was to transfer money which, when delivered to him, as agent for the Sherrills, became their property which was diverted by defendant to his own use. See Duncan v. State, 202 Tenn. 431, 304 S.W.2d 625; McCommon v. State, supra; Switzer v. State, supra.

Defendant admitted in his testimony that the Sherrill mortgage should have been paid off in the due course of business, that he failed to do so because he was short of cash. The evidence of the activity in his bank account refutes this testimony and the jury was obviously entitled to reach the conclusion, which it did, in making a finding of defendant's guilt.

■ It is next assigned as error that the State's attorney deprived the defendant of a fair trial by repeating inflammatory or misleading remarks within the hearing of the jury during trial and argument. Numerous specific examples are related in the brief. In each instance that purportedly improper remarks made by State's counsel were called to the court's attention, the trial judge promptly ruled on the objection, and we fail to find prejudice to the defendant in those instances called to our attention. We note that this case was tried with a great deal of zeal on the part of counsel for both parties, and at one point in the record the State's counsel remarked on his own ineptitude. We think the defendant was convicted on the evidence in this case and not as the result of any impropriety on the part of the State's counsel either by accident or design.

■ The third assignment contends the trial court erred in charging to the jury: "The essence of fraudulent breach of trust does not embrace any intent to deprive the owner of his property, and no matter how good the intention of the defendant may be at the time of the misappropriation, he is guilty." We have examined those instructions in full and find that they conform to the law as set forth in several of the cases which we have cited heretofore. Raine v.

State, supra; McCommon v. State, supra; Switzer v. State, supra.

■ By the fourth assignment it is contended that the trial court should not have charged the jury on the offense of larceny because the State's attorney had abandoned this count in final argument. The charge of larceny had not been formally dismissed, and the trial court was obliged to submit this charge from the indictment to the jury. In a case of this nature, where the several counts in the indictment are all based upon the same transaction, the State is not required to make an election. Raine v. State, supra.

We have reviewed this record thoroughly, and considered each of the assignments of error, it results that the the judgment of the trial court is affirmed.

OLIVER and MITCHELL, JJ., concur.

OPINION ON PETITION TO REHEAR

O'BRIEN, Judge.

■ A petition to rehear has been filed in this cause which must be overruled since it presents nothing of a material nature which would warrant a reconsideration of the views expressed in the original opinion.

In the petition to rehear it is contended that the court omitted to recognize in its recitation of the facts that the defendant's concession of the practice and the trade for paying off mortgage balances was construed to mean within thirty (30) days, and that this established that if any intent to defraud was formed it was formed outside the period of the indictment.

In the opinion, we remarked that the contract executed by defendant as an agent for Charles E. Sherrill was dated August 28th, 1969, and was a standard form commonly used in that locality, providing among other terms and conditions, "seller agrees to pay off loan balance with Home Federal and furnish buyer warranty deed

and title"; and that the seller would convey good and merchantable title to buyer by general warranty deed, subject to no defects, liens or encumbrances, except as specified. On September 3rd, 1969, defendant received the balance of the purchase price from the buyer and furnished a settlement sheet indicating no mortgage was assumed or given. On September 4th, 1969, this sum was deposited in defendant's checking account. On September 5th, 1969, a warranty deed was executed by the sellers and acknowledged by defendant, indicating that the property was unencumbered with the deed showing no exceptions. Defendant did not pay off the mortgage indebtedness with the proceeds of the sale. The total balance due was not paid until April, 1971.

In a case of this nature, though some of the cases in this State hold it is not essential or necessary to prove any intent on the part of an accused to deprive the owner of his property (see original opinion), it is quite obvious that the intent became manifest during the thirty (30) day period subsequent to the date defendant received the balance of the purchase price from the buyer. As we stated in the orignal opinion, the defendant's bank statement indicates that deposits were made in excess of $24,000.00. His wife withdrew during that period of time the sum of $1,657.53, the larger part of which went to pay business and office expenses. During the same period of time, other withdrawals from the account totalled more than $16,000.00. This defendant and his wife were the only persons who had authority to make withdrawals from the bank account. The fact that the mortgage balances and various encumberances on the property were not paid within a reasonable time after the closing certainly is an adequate indication of criminal intent which warranted the verdict of the jury.

The other grounds stated in the petition for rehearing were considered in arriving at the result reached in the original opinion.

The petition to rehear in this cause fails to comply with Rule 32 of this court in several respects. Nevertheless we have elected to consider it and find it to be without merit. It is not the function of this court, nor is it necessary, to grant leave to a defendant to petition for a suspended sentence after an adverse ruling by this court. T.C.A. Sec. 40–2901.

The petition to rehear is denied.

OLIVER and MITCHELL, JJ., concur.